**Wadsworth v. Wadsworth**

C.P. of Clinton County, no. 1220-95-Custody.

*Frederick D. Lingle,* for plaintiff.
*Charles R. Rosamilia Jr.,* for defendant.

SAXTON, *J.,* May 1, 1996—

## PROCEDURAL BACKGROUND

This matter is before the court on plaintiff's request to have physical and legal custody of her minor son, Ryan S. Wadsworth, born July 10, 1992, returned to her. Ryan currently lives with defendant, his maternal grandmother; she has been his primary caregiver his entire life. A hearing was held on November 17, 1995, at which time this court ordered the matter to be referred to Robert Meacham, licensed psychologist, for an evaluation as to the efficacy of returning Ryan to plaintiff. This report was completed and filed with the court on March 14, 1996. A further hearing was held on April 26, 1996.

## FACTUAL FINDINGS

(1) Ryan has lived with his grandmother, the defendant, for his entire life with only minimal contact with plaintiff.

(2) Plaintiff is currently pregnant to her paramour, and fiancé, Wayne Keen. The expected birth of her child is June 1996. She expects to marry Mr. Keen on July 20, 1996.

(3) Ryan is emotionally attached to all the parties involved, including Mr. Keen and his son, Wayne Jr.

(4) Mr. Keen was incarcerated for an incident in 1989 when he pled nolo contendere to charges stemming from a sexual relationship he had with his 14-year-old stepdaughter. Mr. Keen continues to receive counseling and has participated in sexual abuse treatment. Mr. Keen is not believed to be at risk for further sexual offenses.

(5) Plaintiff is currently laid off from her employment.

(6) Plaintiff is greatly in need of parenting skills. She is currently enrolled in parenting classes through the community perinatal support program. She has completed four classes and has four more remaining. The help provided from this program is expected to continue with the birth of plaintiff's new baby.

(7) The impending new baby and marriage will add a great amount of stress to plaintiff's life.

(8) Defendant has Ryan enrolled in Kiddie Corner day care in Avis from 8:30 a.m. to 3:30 p.m., five days a week. Ryan is scheduled to begin Head Start in the fall of 1996.

(9) Ryan is a well-adjusted and happy boy in his current environment.

(10) Defendant is the primary parenting figure in Ryan's life.

## DISCUSSION

The Supreme Court of Pennsylvania has recently changed the way this court must decide custody disputes between biological parents and third parties. The pre-

sumption that a parent has a prima facie right to custody as against third parties was abandoned in *Rowles v. Rowles,* 542 Pa. 443, 668 A.2d 126 (1995). Instead, this court must look to the "best interest of the child" standard and make custody determinations based upon a preponderance of the evidence. *Id.* at 446, 668 A.2d at 128. In making this determination, the court must weigh "parenthood as a strong factor for consideration"; however, the ultimate concern of the court should be "what affiliation will best serve the child's [best] interests, including physical, emotional, intellectual, moral, and spiritual well-being." *Id.* at 447, 668 A.2d at 128 (citing *Ellerbe v. Hooks,* 490 Pa. 363, 374, 416 A.2d 512, 517 (1980) (Flaherty, J., and Nix, J., concurring)).

The simple fact in this case is that plaintiff is not yet ready to resume the full-time parenting of Ryan which she gave up many years ago. Plaintiff has recently just begun to take responsibility for her own actions; she is not yet capable of taking on the responsibility of parenting Ryan. Further, the court recognizes that plaintiff is about to go through two major life changes. She is about to have another child and also get married. These two events will add additional stress to her life. The court believes that adding the full-time care of Ryan to this list will not be good for plaintiff nor would it be in Ryan's best interests. The court is encouraged by plaintiff's participation in parenting classes and in her recognition that she needs this help. However, although these efforts bode well for the future reunification of plaintiff with Ryan, at this time, the court believes plaintiff still has a way to go before she is capable of providing Ryan with all his needs on a full-time basis.

Additionally, plaintiff has had very minimal contact with her son over the past several years. Defendant has been his primary caregiver. The court does not believe it is in Ryan's best interest to thrust him into a situation where he must leave the only stabilizing parental figure he has ever known to live in a new home with a new "mommy." Ryan needs more time to get to know his mother; he has had little to no contact with her for most of his life. The plan recommended by Robert Meacham, licensed psychologist, fits the needs of the child in this situation. It is in Ryan's best interest to spend more time with his mother and develop a relationship with her. However, the court agrees that a reunion with his mother should be gradual and supervised so as to assure Ryan's emotional and physical well-being is secure. The court understands plaintiff's anxious attitude; however, she chose to leave her son in the care of defendant and go her own way without Ryan. She must now understand that while she was away Ryan went his own way without her, too. Now, plaintiff must re-establish a relationship with her son and show this court that she can care for him. This process takes time and plaintiff must be patient— for Ryan's sake.

## ORDER

And now, this date, in accordance with the foregoing opinion, it is hereby ordered:

(1) Defendant shall have physical and legal custody of Ryan Wadsworth, born July 7, 1992.

(2) Plaintiff shall have partial physical custody of Ryan as follows:

(a) Each Tuesday and Thursday evening for three consecutive hours after Ryan returns from his day care facility at Kiddie Corner;

318

(b) Each Saturday for eight consecutive hours;

(c) Plaintiff and defendant shall mutually agree when plaintiff may pick up and drop off Ryan.

(3) The parties together shall meet with Robert Meacham, licensed psychologist, on July 31, 1996, at 10 a.m., Third Floor, Clinton County Courthouse, in order to monitor the progress of the visitations.

(4) After this appointment, Robert Meacham shall file a memorandum with this court as to whether there should be increased visitation or overnight visitations with plaintiff. He shall provide each party with a copy of his memorandum.

(5) After the receipt of this memorandum, either party may schedule this matter for further hearing.